536                July 5, 2024                No. 24

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

KEVIN LAVIN TAYLOR,
aka Kevin Lavan Taylor,
*Petitioner on Review.*

(CC 17CR26979) (CA A168298) (SC S070387)

On review from the Court of Appeals.*

Argued and submitted March 4, 2024, at Lewis & Clark Law School, Portland, Oregon.

David L. Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Deputy Defender, Criminal Appellate Section.

Patrick M. Ebbett, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, Bushong, James, and Masih, Justices, and Balmer, Senior Judge, Justice pro tempore.**

BUSHONG, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

James, J., concurred and filed an opinion.

_____
    * Appeal from Multnomah County Circuit Court, Benjamin Souede, Judge. 326 Or App 396, 532 P3d 502 (2023).

    ** DeHoog, J., did not participate in the consideration or decision of this case.

**BUSHONG, J.**

The Oregon Evidence Code generally prohibits the use of "other acts" evidence to "prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(3). In this criminal case, we must decide whether the trial court violated that prohibition when it received video footage showing that defendant had engaged in a very similar course of conduct immediately before the criminal activity for which he was convicted.

Defendant was charged with third-degree sexual abuse for making sexual contact with a woman who was studying alone at a community college library. At trial, the state offered "other acts" evidence consisting of security video footage showing that, just before defendant's encounter with the victim, he sat down next to another woman in the library and encroached on her space in a similar manner, until she got up and left. Defendant argued that the video footage was inadmissible because its relevance depended on character-based reasoning—namely, that it showed that he had a propensity to act inappropriately towards women. The trial court disagreed and admitted the evidence. The Court of Appeals affirmed.

We allowed review and now affirm the decisions of the trial court and the Court of Appeals. The video footage, when considered along with the victim's testimony, was admissible to establish that, on the afternoon of the charged offense, defendant had engaged in an unusual pattern of behavior consistent with a person seeking an opportunity to make sexual contact with a woman studying alone in the library. That fact is relevant to inferring that defendant committed the charged act and did so intentionally. Because that inference is based on defendant's ongoing state of mind and course of conduct when he encountered the victim in the library that afternoon, it does not depend on impermissible character reasoning.

## I.   BACKGROUND

### A.   *Facts and Trial Court Proceedings*

We take the facts from the trial court record. The victim testified that she was studying alone at a table divided

into study carrels on the first floor of a community college library when defendant sat down next to her. Over the next several minutes, defendant slowly encroached on her space, inching his legs and body closer to her, eventually grazing her leg. She stomped on his foot to get him to back off, but he continued to sidle closer to her, until she felt his hand reach under the desk and touch her vaginal area. She stood up, collected her things, and moved away, reporting the incident to a librarian and campus security. Defendant was charged with third-degree sexual abuse for his conduct in that encounter.

The state planned to introduce as evidence security video footage, which had been recorded just minutes before defendant's encounter with the victim in this case.[1] That video showed defendant entering the library, going upstairs, selecting a book, and then sitting down next to a woman who was studying alone at a table divided into study carrels, even though there were many other places to sit. Over the course of about 30 minutes, defendant moved closer to the woman, extending his leg until his foot was under her chair. The woman got up and left shortly thereafter. Defendant then got up and went downstairs, where he sat down in a chair next to the victim, who was also studying alone.

Before trial, defendant moved to exclude that video footage, arguing, among other things, that it was not relevant to any fact at issue in the case, and that, even if it were, the footage would be "pure propensity" evidence and should be excluded under OEC 404(3).[2] The prosecutor responded that the video footage, as "other acts" evidence, was relevant and admissible to show defendant's intent—meaning that defendant had engaged in knowing or intentional conduct—when he touched the victim, and to demonstrate defendant's motive, plan, and preparation. The prosecutor added that the footage showed conduct that was consistent with the victim's testimony, and both incidents had occurred

---

[1] Defendant's encounter with the victim was not captured on security video.

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

in succession in the same library, on the same afternoon, in nearly identical study carrel setups.

After hearing argument and reviewing the video, the trial court ruled that it was admissible, concluding that it was relevant for a nonpropensity purpose: to prove motive, plan, preparation, and absence of mistake. The court explained "the motive part" as "being seated close enough to a woman sitting alone to allow for, at the very least, putatively incidental touching and potentially would allow for more than incidental touching."[3]

At trial, the video was played for the jury during the state's case-in-chief and during the state's cross-examination of defendant. Defendant testified at trial that, as shown on the video footage, he sat down next to the first woman to read and that he stretched his legs because he has a bad back. Defendant denied stretching his legs toward the victim or encroaching on her space after sitting down next to her, denied that she stomped his foot, and denied that he touched her. The jury convicted defendant of third-degree sexual abuse. He appealed, contending that the trial court erred in admitting the video footage.

B.   *Appellate Proceedings*

The Court of Appeals addressed defendant's claim of error in two separate written opinions. In its first opinion, the Court of Appeals concluded that "the trial court did not err in admitting the challenged security-video footage for the purpose of establishing that defendant had a plan and acted in accordance with that plan." *State v. Taylor*, 315 Or App 608, 624, 501 P3d 7 (2021) (*Taylor I*). We vacated that decision and remanded the case to the Court of Appeals for reconsideration in light of our most recent OEC 404(3) decision, *State v. Jackson*, 368 Or 705, 498 P3d 788 (2021), which described a two-part test for determining whether "other acts" evidence rests on propensity reasoning. *State v. Taylor*, 369 Or 675, 508 P3d 501 (2022).

---

[3] The court then engaged in OEC 403 balancing, weighing the probative value of the evidence against any unfair prejudice to the defendant, concluding that a limiting instruction would be sufficient to mitigate any possible unfair prejudice from the video. Defendant does not assert on appeal that the trial court erred in its OEC 403 balancing.

On remand, the Court of Appeals again determined that the trial court did not err in admitting the video footage. The court concluded, "using the analysis of *Jackson*," that the state had "sufficiently 'articulated the chain of inferences that makes the evidence relevant to an identified purpose and explained how that chain of inferences does not depend on the actor's character.'" *State v. Taylor*, 326 Or App 396, 398, 532 P3d 502 (2023) (*Taylor II*) (quoting *Jackson*, 368 Or at 733). The court explained that "[t]he inferences the state identified—those of an unlinked or spurious plan—did not require character reasoning to connect the other act to the charged act." *Taylor II*, 326 Or at 408-09.[4] Thus, the court concluded, the trial court did not err "by concluding that the other-acts evidence was relevant and admissible for the purpose of proving defendant's plan." *Id.* at 409. We allowed defendant's petition for review.

## II.   DISCUSSION

### A.   *The Parties' Contentions*

On review in this court, defendant argues that the trial court erred in receiving the video footage, contending that it is character evidence that is inadmissible under OEC 404(3). We review the trial court's evidentiary ruling for legal error. *Jackson*, 368 Or 705 (applying standard).

Defendant contends that the "other acts" evidence at issue in this case is relevant only to show his "character," leaving the jury to infer that defendant's sexual contact with the victim was consistent with that character.[5]

---

[4] We explained how a "spurious plan" differs from a "true plan" in *State v. Turnidge (S059155)*, 359 Or 364, 439, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017). In a "true plan," the charged conduct and the "other acts" evidence are "linked"—that is, they are different steps or stages in the execution of a unified scheme. *Id.* In a "spurious plan," the charged conduct and the "other acts" evidence are "unlinked" but are sufficiently similar in nature and proximity to show that a defendant "engaged in a pattern or systemic course of conduct from which the existence of a plan [may be] inferred." *Id.* (emphasis omitted).

[5] The parties treat the video footage as "other acts" evidence for purposes of OEC 404(3) because it depicts acts other than the touching on which the sexual abuse charge was based. We note that the line between acts resulting in the charge at issue and "other acts" is not always clear, and, as the concurrence points out, it could be argued that, because the footage shows part of a continuing course of conduct, it should not be considered "other acts" evidence at all. Because the state does not make that argument, we do not address it here.

Defendant reasons that (1) "character" means "propensity" for purposes of the Oregon Evidence Code; (2) the video footage is relevant only because it shows defendant's propensity to behave inappropriately toward women; and (3) the video footage could lead a jury to infer that, because defendant had a propensity to act inappropriately toward women, he touched the victim's vaginal area because that conduct was consistent with his character. According to defendant, that makes the footage inadmissible under OEC 404(3).

The state contends that, because the footage depicts defendant's actions immediately before he encountered the victim in this case, the evidence showed his ongoing state of mind in relation to his course of conduct across both incidents. According to the state, the chain of reasoning establishing the probative value of that evidence does not require an inference about defendant's character because the jury would not need to infer from the video footage that defendant is generally inclined to commit this particular type of bad act, or that defendant had acted in conformity with that propensity in his encounter with the victim.[6]

Defendant responds that the state's theory of admissibility fails because (1) the state fails to show *how* the jury was supposed to infer that defendant had a particular state of mind from the video footage of his interaction with the first woman; and (2) any such inference necessarily depends on propensity reasoning.

As we will explain, we conclude that the video footage was relevant to show defendant's state of mind and course of conduct in seeking out an opportunity to initiate sexual contact with a woman sitting alone in the library that

---

[6] The state contends that the video footage was admissible as "other acts" evidence under OEC 404(3) and does not rely on OEC 404(4), which provides that, in criminal actions, evidence of other acts committed by the defendant "is admissible if relevant" unless precluded by certain other rules of evidence or the state or federal constitutions. We held in *State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015), that "the legislature intended OEC 404(4) to supersede OEC 404(3) in criminal cases, except, of course, as otherwise provided by the state or federal constitutions." We clarified that statement in *State v. Baughman*, 361 Or 386, 404, 393 P3d 1132 (2017), explaining that OEC 404(4) supersedes the first sentence of OEC 404(3) but it "does not supersede the second sentence of OEC 404(3)[.]" Because the state chose to rely solely on that second sentence of OEC 404(3) in support of its theory of admissibility, we do not address whether the video footage was admissible under OEC 404(4).

afternoon. Because defendant's unusual pattern of behavior was directed towards two women under near-identical circumstances, one immediately after the other, it is relevant to show that defendant committed the charged act and did so intentionally, without relying on any improper propensity inferences.

## B. *Admissibility of "Other Acts" Evidence under OEC 404(3)*

We examined OEC 404(3) in detail in *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021), where we held that evidence that the defendant had driven recklessly in his neighborhood prior to the night of the charged crimes was not admissible to prove that he intentionally damaged another person's property with a vehicle. We explained that, in criminal cases, OEC 404(3) prohibits the prosecution from using "other acts" or other uncharged misconduct evidence "to argue that the defendant has either a general propensity to engage in misconduct or a specific propensity to engage in misconduct like the charged crime and, therefore, it is more likely that the defendant committed the charged crime." *Id.* at 476. We explained that the state's theory of admissibility of defendant's prior reckless driving was "to prove defendant's character—that when he 'gets angry, he acts out'—in order to prove that he acted in conformance therewith." *Id.* at 493-94. That theory, we concluded, was a propensity-based theory of relevance prohibited by OEC 404(3). *Id.* at 494.

In reaching that conclusion, we explained the process by which courts should determine whether "other acts" evidence is admissible. To be admissible, such evidence must be relevant under OEC 401.[7] To establish its admissibility, the proponent of the evidence "must articulate a theory of relevance" because "[t]he proponent's theory of relevance is critical" to the court's analysis. *Id.* at 475. That requires the proponent to "identify the inferences that it wants the factfinder to draw based on the evidence and explain how those inferences make the existence of a fact of consequence more or less probable than it would be without the evidence." *Id.*

---

[7] OEC 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Skillicorn* thus requires us to analyze the theory of relevance articulated by the state as the proponent of the video evidence to determine whether that theory necessarily depends on prohibited reasoning about defendant's character. In this case, the state contends that the video footage is relevant to show defendant's state of mind and course of conduct at the time of his encounters with both women in the library. The state infers from defendant's state of mind and conduct at the time that it was more likely that he touched the victim in a sexual manner, consistent with her testimony, and that he did so intentionally.[8]

Although "state of mind" and "course of conduct" are not expressly included in the list of permissible purposes in OEC 404(3), that list "is not exclusive." *Skillicorn*, 367 Or at 482. And we have cautioned against immediately jumping to the permissible purposes listed in OEC 404(3) without considering whether the proponent's theory of relevance relies on propensity reasoning. *Id.* at 483 (citing *State v. Johns*, 301 Or 535, 549, 725 P2d 312 (1986)). We explained that OEC 404(3) allows for the admission of "other acts" evidence "to prove *any relevant fact* other than that a person has a propensity to commit certain acts and acted in accordance with that propensity on a particular occasion." *Id.* at 482 (citing OEC 404(3) and *Johns*, 301 Or at 549 (emphasis added)).[9] Thus, we must determine whether video footage showing defendant's conduct directed towards the first woman

---

[8] Defendant contends that the state's theory of relevance in this court—that the video footage was relevant to show defendant's state of mind and course of conduct—is different from the theories it articulated in the trial court. We disagree. Although the state's theory of relevance in the trial court was articulated in terms of several, specific noncharacter purposes identified in OEC 404(3), as discussed above, the state's theory of admissibility has always focused on describing the defendant's state of mind at the time that he engaged in an unusual pattern of behavior directed towards two different women in the library that afternoon.

[9] In *Johns*, we explained that OEC 404(3) prohibits the admission of "other acts" evidence "only when the evidence is offered solely to prove" the person's character and that the person acted in conformity with that character. 301 Or at 548. In *Skillicorn*, we overruled *Johns* "to the extent that it [held] that evidence of uncharged misconduct can be admitted under the doctrine of chances for the purpose of arguing that, because the defendant engaged in deliberate conduct before, it is likely that he engaged in it again during the charged incident." 367 Or at 493. But we did not overrule other aspects of *Johns* and, as noted, we cited and applied those other aspects of the *Johns* opinion in *Skillicorn*. *See also Jackson*, 368 Or at 734 n 1 (Garrett, J., concurring) (noting that *Skillicorn* overruled *Johns*

is relevant—without relying on propensity reasoning—to prove defendant's state of mind and course of conduct when he encountered the victim, as the state contends, or whether its only relevance for that purpose depends on propensity reasoning, as defendant contends.

## C. *Defendant's State of Mind and Course of Conduct*

A defendant's state of mind "'is often the most difficult element of a crime to prove because many crimes are unwitnessed and even if a witness is present, the witness can only surmise the actor's state of mind.'" *State v. Moen*, 309 Or 45, 68-69, 786 P2d 111 (1990) (quoting *Johns*, 301 Or at 551). We have held that "other acts" evidence can be admissible to show a person's state of mind at the time of the charged offense.

For example, in *State v. Salas-Juarez*, 349 Or 419, 245 P3d 113 (2010), we determined that a statement made on the night of the incident at issue was admissible to show the declarant's state of mind. The defendant in *Salas-Juarez* was charged with murder. The defendant and another man, Russell, had been involved in a bar fight with six other participants. The victim, Lunsford, was fatally stabbed during that fight. At trial, the defendant offered testimony from a witness who had heard Russell, after a minor altercation with a bartender's son earlier that evening, stating that he wanted to "slash" him.[10] At trial, the defendant had argued that Russell's statement that he had wanted to "slash" the bartender's son was admissible under OEC 404(3) to show Russell's motive or intent in support of defendant's contention that Russell, not the defendant, had fatally stabbed Lunsford. The trial court disagreed and excluded the statement. We reversed. Identifying the first question as "whether that evidence was relevant," we explained that the "threshold for admission of evidence on grounds of relevance is low: 'Evidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action.'" 349 Or

---

with respect to the doctrine of chances but did not call into question other aspects of the *Johns* opinion).

[10] The bartender's son was not involved in the fight later that evening that led to Lunsford's death.

at 427 (quoting *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999)).

Applying that standard, we concluded that the evidence of Russell's statement was relevant because, "[o]ne inference that the jury was entitled to draw from Russell's reaction to the seemingly minor altercation with the bartender's son was that Russell was in an angry frame of mind on the night in question." 349 Or at 428. Russell's statement, we explained, "was at least some evidence of his general state of mind at the time that he made the statement." *Id.* Then, from evidence of Russell's later actions, the jury "reasonably could infer that Russell's state of mind was an ongoing one." *Id.* Those inferences, in turn, made it more probable that Russell—not the defendant—had slashed at Lunsford with his knife. Thus, we concluded that "evidence of Russell's state of mind would permit the jury to conclude, through a short series of inferences, that Russell [had] stabbed [the victim]." *Id.* at 429.

After concluding that the evidence was relevant to Russell's state of mind, we considered whether OEC 404(3) precluded its admission. We assumed that the statement was an "other act" for purposes of OEC 404(3) and concluded that it was admissible under the rule. We explained that Russell's statement about wanting to "slash" the bartender's son, made an hour and a half before the fight that led to Lunsford's death, "was evidence from which the jury reasonably could infer that Russell was generally in an angry or violence-prone mood—especially when it is coupled with his later behavior in instigating the fight" that led to Lunsford's death. *Id.* at 429-30.

We have also held that a defendant's course of conduct close in time to the charged offense was admissible to show the defendant's state of mind at the time of the offense. For example, in *State v. Lewis*, 352 Or 626, 634, 290 P3d 288 (2012), we concluded in a criminally negligent homicide case that "evidence of a person's driving before the time and place of an accident is relevant to that person's state of mind at the time of the accident." We explained that evidence of the defendant's erratic driving 10 to 15 minutes before the collision was "logically relevant to the issue of defendant's

state of mind at the time of the collision." *Id.* at 635 (citing *Salas-Juarez*, 349 Or at 428-29); *see also State v. Betts*, 235 Or 127, 133, 384 P2d 198 (1963) (stating that "the host's driving prior to the time and place of the accident has been considered relevant upon the issue of what was the host's state of mind at the time of the accident").

Applying those principles here, we agree with the state that the video footage of defendant's interaction with the first woman was relevant to show defendant's state of mind just minutes later when he approached the victim. A jury could reasonably infer defendant's state of mind from the video footage and the victim's testimony—that is, that he was looking for an opportunity, under the guise of putatively incidental physical contact, to sexually touch a woman studying by herself. That state of mind was relevant to show that defendant in fact had touched the victim in a sexual manner, and that he did so intentionally. That theory of relevance does not rely on impermissible propensity reasoning.

The first step in identifying impermissible propensity reasoning, as we explained in *Skillicorn*, "is inferring the defendant's subjective character, disposition, or propensities" from the evidence. *Skillicorn*, 367 Or at 481. That step "gives rise to the risk that the factfinder's verdict will be affected by prejudice," that is, the risk that the jury could convict the defendant "for being a criminal rather than for [committing] the specific crime" charged. *Id.* (citing Edward J. Imwinkelried, 1 *Uncharged Misconduct Evidence* § 2:19, 2-142 (2013)). The second step in propensity reasoning is "inferring the defendant's conduct on a particular occasion from his or her subjective character." *Id.* (citing Imwinkelried, 1 *Uncharged Misconduct Evidence* § 2:19 at 2-143). That step "gives rise to the risk that the factfinder will 'overestimate the probative value of character evidence.'" *Id.* (citing Imwinkelried, 1 *Uncharged Misconduct Evidence* § 1:3 at 1-29).

Neither impermissible inference is necessary to the state's theory of relevance here. The video footage of defendant's encounter with the first woman in the library was not used to invite the jury to infer that it was in defendant's general character to make unwanted sexual contact with a

woman sitting alone if the opportunity arose. Rather, it was used to show that defendant had a particular state of mind during the short period in which he approached both women. There was little risk that the jury might convict defendant of sexual abuse for being the type of person who would commit sexual abuse after viewing the footage because the video did not show any sexual contact. Nor was there too much risk that the jury might overestimate the probative value of the video footage by inferring that, because he encroached on the first woman's space, he had the character of a sexually abusive person and acted in conformity with that character during his encounter with the victim.

The video footage and the victim's testimony in this case together show an unusual pattern of behavior of finding a woman sitting alone in the library, choosing to sit next to the woman—despite the availability of other seats—and slowly encroaching on the woman's space. From that pattern, a jury could infer that defendant's state of mind when he entered the library included looking for an opportunity to make sexual contact with a woman studying by herself. The fact that defendant did not make sexual contact with the first woman he encountered—possibly because she left before the opportunity arose—does not make the inference impermissible or the footage irrelevant. Because defendant's next encounter with a woman sitting alone in the library— the victim—was so close in time, proximity, and circumstances as his encounter with the first woman, a jury could infer that defendant's state of mind when he encountered the first woman continued through his encounter with the victim.

To be admissible under OEC 404(3), the state did not have to establish that the inference that defendant was looking for an opportunity to make sexual contact with a woman studying by herself was the *only* logical inference the jury could make. A jury could permissibly infer from the video footage that defendant did not intend to touch either woman in a sexual way, consistent with defendant's testimony. But the inference that defendant was looking for a woman sitting alone that he might touch sexually if he had the opportunity, ultimately resulting in his sexual contact

with the victim, is also a permissible inference. If, as here, there is a relevant permissible inference from "other acts" evidence that is not based on showing defendant's character or that he acted in conformity with that character, the evidence is admissible under OEC 404(3).[11]

We conclude that the video footage was admissible as "other acts" evidence under OEC 404(3) because it was relevant to show defendant's state of mind and course of conduct at the time of his encounter with the victim and it was not relevant solely to show defendant's character or that he had acted in conformity with that character.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**JAMES, J.,** concurring,

The rules of evidence can be seen as a complex and intricate machine. Multiple rules apply to any piece of evidence, and each rule itself has multiple subcomponents and parts all operating together. Each of those parts must be in good working order for the entire machine to operate efficiently. This court's jurisprudence around the Oregon Evidence Code has a maintenance aspect—when we take a case, we focus on a subcomponent of the greater evidentiary mechanism, sometimes to remind and highlight to the bench and bar the function that subcomponent plays; at other times, to tune a component when we perceive that its application has become misaligned, or out of intended specifications. We do not serve the health of the greater machine by endlessly tuning only one subcomponent.

OEC 404(3) has within it many subparts. What is an "act"? What is an "other" act? What is an "other act" that "proves the character?" What is "character"? Our OEC 404 cases have covered a small part of OEC 404—focusing, again and again, on why some piece of evidence is relevant to intent, or motive, or some other example of noncharacter propensity reasoning—in my view, at the expense of

---

[11] Any other possible inferences may be pertinent to whether the evidence should be excluded under OEC 403, and, if not, whether a limiting instruction should be given. However, defendant did not challenge the trial court's ruling that OEC 403 does not preclude admission of the video footage evidence.

the other aspects of OEC 404, many of which are predicate threshold issues. As a result, I'm concerned that one subpart of OEC 404(3) is carrying the entire weight of reasoning for all other acts jurisprudence in Oregon—weight that should be distributed more evenly across all aspects of the rule. Returning to the analogy, we are repeatedly tuning one part of the machine, while ignoring other parts that have never been serviced, and the result, in my view, is that OEC 404 analysis in our state is not firing on all cylinders.

In this case, I concur in the result the majority reaches—OEC 404 did not require the exclusion of the video footage in this case. I have no quibble with the majority's reasoning. Under different circumstances I would agree with it—but here, I simply view it as unnecessary. In accepting this case for review, we added a question for the parties: "whether the doctrine of *res gestae* evidence, as it has been applied in the context of Federal Rule of Evidence 404(b), is applicable to Oregon Rule of Evidence 404(3)." Although, as I will explain, that doctrine has some problems, its core distinction between extrinsic and intrinsic acts remains an essential component of other acts analysis. OEC 404(3) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Before a court engages in an extended OEC 404 analysis of proffered evidence, a threshold question must be answered: Is this an "other" act. I conclude that the video evidence was not an "other" act for purposes of OEC 404. With that threshold not met, the inquiry ends, and I need not consider whether it was, or was not, offered to "prove the character of a person in order to show that the person acted in conformity therewith."[1]

---

[1] An astute reader may conclude that something in our approach to this case is slightly off. That is correct. This case was litigated, at trial, before the Court of Appeals, and before us, under OEC 404(3). However, as we have made clear, the admission of other acts of a defendant in a criminal trial in Oregon is governed by OEC 404(4), not OEC 404(3). *State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015).

However, as we have also stated, OEC 404(4) is subject to OEC 403 balancing. *Id.* at 18-19; *see also State v. Baughman*, 361 Or 386, 402, 393 P3d 1132 (2017) (same). And we have held that engaging in an OEC 404(3) assessment can be valuable to accurately assessing the probative value and prejudicial effect of other acts evidence under OEC 403. *Williams*, 357 Or at 20. Thus, to the extent I discuss OEC 404(3), that should be understood merely as a conceptual aid in performing what is actually happening—the OEC 403 balancing required by OEC 404(4).

## I.   PROCEDURAL BACKGROUND

I find it useful to clarify an aspect of the procedural background of this case. Defendant was originally charged in a multicount information with crimes against three people. Count 1 alleged sexual abuse in the third degree against one known victim. That person was located on the first floor of the library. Count 3 alleged sexual abuse in the third degree against a known victim, but on an incident alleged to have occurred months earlier. Counts 2 and 4, which the state acknowledged were alternative pleadings of a single crime, alleged sexual abuse in the third degree or harassment against a different unknown victim—the person depicted in the video, occurring moments before the allegations in Count 1. That unknown person was on the second floor of the library and was the first victim defendant encountered and attempted to assault, after entering the library. After the first victim left, defendant proceeded to the first floor of the library where he encountered the victim of Count 1. However, with respect to that victim, a pillar blocked the line of sight of the video surveillance system.

Defendant challenged the propriety of joining the counts and, in the alternative, moved to sever them. The trial court found that the state had properly joined the incidents and denied the motion to sever. The court based its ruling, as to Count 3, on the similarity of conduct. But, as to the issue of joinder and severance of Counts 1, 2, and 4, the trial court's decision turned on the state's allegation that the incidents were part of one continuous criminal episode. After the court declined to sever the counts and made further pretrial rulings, defendant then executed a written jury waiver only as to Counts 2 through 4. The trial proceeded, therefore, as a jury trial with respect to Count 1 involving the second victim, and a bench trial on Counts 2 through 4, which included, as part of Counts 2 and 4, the unknown first victim from the incident immediately prior to the incident forming the basis of Count 1.

After executing the jury waiver, defendant moved to exclude the video evidence. Initially that argument was based on relevance. The trial court clarified with counsel:

"I'm sorry. Just so I can understand the motion. You're not arguing that that isn't relevant to Counts 2 and 4, which are being tried before the Court."

Defendant did not argue that the video was not relevant evidence as to Counts 2 and 4, but argued it was irrelevant as to Count 1, being tried to the jury. Defendant argued that, if the court found it was relevant, it was nevertheless excludable under OEC 404.

Having clarified the background, I turn to my reasoning as to why the video depicting the incident forming the basis of Counts 2 and 4 was not an "other" act for purposes of OEC 404 in the trial on Count 1.

## II. *RES GESTAE* AND THE INTRINSIC-EXTRINSIC DISTINCTION

*Res gestae* is a common-law concept meaning "things done." *Black's Law Dictionary* 1423 (9th ed 2009). The concept has its origins in the context of hearsay and stands for the proposition that when "conduct and the accompanying words [are] all part of the same transaction or the 'things done,' and if the conduct [is] admissible, so [are] the words." Chris Blair, *Let's Say Goodbye to Res Gestae*, 33 Tulsa L J 349, 350 (1997); *see also* James B. Thayer, Bedingfield's Case—*Declarations as a Part of the Res Gesta*, 15 Am L Rev 1, 2 (1881) ("[w]henever any act may be proved, statements accompanying and explaining that act made by or to the person doing it, may be proved if they are necessary to understand it."); Kenneth S. Broun, *McCormick on Evidence* § 218 (6th ed 2009) (explaining hearsay origins of *res gestae*).

The doctrine quickly escaped the confines of hearsay, however, and found its application in the context of potentially excludable "other acts" evidence establishing character—what we now refer to as potential 404 evidence. One of the earlier publications in the United States of *res gestae* reasoning in the context of other acts evidence (although the term was not used) occurred in 1829. *Walker v. Commonwealth*, 28 Va (1 Leigh) 574 (1829). There, the defendant was charged with theft of a watch, and the state introduced the uncharged "other act" of the theft of a cloak

which was thoughts to have occurred at the same time. *Id*. The Virginia court concluded that evidence of the theft of the cloak was not an "other" act that could be excluded:

> "It frequently happens, however, that as the evidence of circumstances must be resorted to for the purpose of proving the commission of the particular offence charged, the proof of those circumstances involves the proof of other acts, either criminal or apparently innocent. In such cases, it is proper, that the chain of evidence should be unbroken. If one or more links of that chain consist of circumstances, which tend to prove that the prisoner has been guilty of other crimes than that charged, this is no reason why the court should exclude those circumstances. They are so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety; and there is no reason why the criminality of such intimate and connected circumstances, should exclude them, more than other facts apparently innocent."

*Id*. at 576.

The doctrine has a long and complicated history in the context of the common law of evidence, and its expansion and eventual misuse became extensively criticized. But with the move away from the common law to statutory codification of rules of evidence the more unobjectionable core of *res gestae* remained. In the context of the Federal Rules of Evidence, that core concept is present in the "inextricably intertwined" doctrine.

As explained by the DC Circuit Court of Appeals:

> "A threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes. Acts 'extrinsic' to the crime charged are subject to [FRE] 404(b)'s limitations; acts 'intrinsic' to the crime are not. \*\*\* In other words, [FRE] 404(b) only applies to truly 'other' crimes and bad acts; it does not apply to 'evidence \*\*\* of an act that is part of the charged offense' or of 'uncharged acts performed contemporaneously with the charged crime \*\*\* if they facilitate the commission of the charged crime.'"

*United States v. McGill*, 815 F3d 846, 879 (DC Cir 2016) (internal citations omitted).[2]

There is a split among federal circuit courts about what, precisely, it means for evidence to be intrinsic versus extrinsic. Some circuits employ a "completes the story" approach, as articulated by the Seventh Circuit:

> "[T]he question is whether the evidence is properly admitted to provide the jury with a 'complete story of the crime [on] trial,' *United States v. Roberts*, 933 F2d 517, 520 (7th Cir 1991) (internal quotations omitted, brackets in the original), whether its absence would create a 'chronological or conceptual void' in the story of the crime, *see United States v. Hattaway*, 740 F2d 1419, 1424-25 (7th Cir 1984); *United States v. Adamo*, 882 F2d 1218, 1234 (7th Cir 1989), or whether it is 'so blended or connected' that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime. *United States v. Bucey*, 876 F2d 1297, 1315 (7th Cir 1987). Thus, cases applying the 'intricately related' doctrine have recognized that evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of [FRE] 404(b)."

*United States v. Ramirez*, 45 F3d 1096, 1102 (7th Cir 1995).

Similarly, the Second Circuit explained:

> "[E]vidence of uncharged criminal activity is not considered other crimes evidence under [FRE] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial."

*United States v. Carboni*, 204 F3d 39, 44 (2d Cir 2000) (internal citations omitted).

Other circuits, such as the DC Circuit, have rejected the "completes the story" approach:

> "[I]n defining the contours of intrinsic evidence that is not subject to [FRE] 404(b), we have rejected the rule embraced by some of our sister circuits that evidence is intrinsic if

---

[2] For purposes of this discussion, FRE 404(b) is the equivalent to OEC 404(3).

it 'complete[s] the story' of the charged crime. \*\*\* That is because 'all relevant prosecution evidence explains the crime or completes the story' to some extent, and the fact that 'omitting some evidence would render a story slightly less complete cannot justify circumventing [FRE] 404(b) altogether.'"

*McGill,* 815 F3d at 879-80 (internal citations omitted).

Instead, the DC Circuit defines extrinsic evidence narrowly:

"We recognize that, at least in a narrow range of circumstances not implicated here, evidence can be 'intrinsic to' the charged crime. [FRE] 404(b), for instance, would not have barred testimony from a witness who saw [defendant] put the counterfeit currency in the Pontiac's console. Although such testimony relates to one of defendant's acts, the act is the charged crime of possessing counterfeit currency. \*\*\* In other words, if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic. In addition, some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime. *See* 22 Wright & Graham, supra, § 5239, at 446-47 (noting that the 'inseparable crimes' interpretation of Rule 404(b)'s 'other' crimes language 'seems justifiable when used to cover situations where the seller of contraband must necessarily be shown to have possessed it....')."

*United States v. Bowie*, 232 F3d 923, 929 (DC Cir 2000).

The Fifth Circuit defines intrinsic and extrinsic acts in another way.

In *United States v. Williams*, 900 F2d 823, 824 (5th Cir 1990), the defendant was charged with conspiracy to possess 670 grams of cocaine with intent to distribute, use of the mails to facilitate drug trafficking, and use of a person under eighteen to assist in avoiding detection for drug trafficking. The government advised defendant that it intended to offer proof of a series of nineteen similar mailings that had occurred during the two months prior to the charged conduct. *Id*. The defendant filed a motion to exclude, and the trial court granted the defendant's motion. *Id*. at 825.

On appeal, the Fifth Circuit reversed. In reaching that decision, the court explained that "[t]he proper test to

apply in deciding the admissibility of 'similar acts' or 'other acts' evidence depends upon whether the evidence in question is 'intrinsic' or 'extrinsic' evidence." *Id*. Under Fifth Circuit precedent, "other act" evidence is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged. As applied to this case, the Fifth Circuit agreed that the evidence offered by the government did not constitute intrinsic evidence. *Id*.

Like the federal courts, state courts have likewise grappled with the inherited common-law concept of *res gestae* and, even when abandoning *res gestae*, have preserved the critical intrinsic-extrinsic distinction. Colorado provides a good example. In 1994, still employing *res gestae*, the Colorado Supreme Court held that:

> "'Other act' evidence, however, generally occurs at different times and under different circumstances from the charged offense. \*\*\* Indeed, 'other' is defined as 'different or distinct from that or those referred to or implied; different in nature or kind.' Webster's New World Dictionary 1007 (2d College ed. 1974). Further, '[t]he policies underlying the rule [404(b)] are simply inapplicable when some offenses committed in a single criminal episode become "other acts" because the defendant is indicted for less than all of his actions.'"

*People v. Quintana*, 882 P2d 1366, 1372-73 (Colo 1994) (internal citations omitted).

In *Quintana*, the state sought to introduce statements of the defendant that were, arguably, disconnected from the crime of prosecution. However, the court rejected that argument:

> "Here, the three statements occurred either during or immediately subsequent to the murder of [victim]. Thus, \*\*\* no evidence was introduced regarding an 'other' act or wrong independent from the charged offense. The statements, rather, occurred during a single criminal episode starting when defendant, Eubanks and Eloyd entered [victim's] Jeep and ending the following day when defendant was arrested. Thus, we do not believe the three statements properly fall within the scope of CRE 404(b)."

Like the federal courts, Colorado eventually abolished the use of the *res gestae* doctrine, and the baggage the term inherited. *Rojas v. People*, 504 P3d 296, 308 (Colo 2022). However, the core concept of "other" acts remained, and the core holding of *Quintana* survived Colorado's eliminating *res gestae*, with the court announcing that it would "join those courts that generally recognize an intrinsic-extrinsic distinction, with extrinsic acts falling under [FRE] 404(b) and intrinsic acts falling outside the [r]ule's scope." *Rojas*, 504 P3d at 308.

### III.   OEC 404

OEC 404(3) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(4) provides that "[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant." Both rules, by their plain terms, only apply to "acts," and even then, only to those acts that are "other" than the acts at issue at trial. Yet, unlike the federal courts and most state courts, this court has, thus far, failed to develop any jurisprudence around what it means to be an act under OEC 404. We have, instead, employed our worn-threadbare tactic of assuming, without deciding. In *State v. Hayward*, we assumed, without deciding, that "listening to death metal music and believing in satanism are 'acts' under OEC 404(3)." 327 Or 397, 409, 963 P2d 667 (1998). We then similarly dodged the issue in *State v. Salas-Juarez*, where we assumed, without deciding, that "the statement was an 'act' within the meaning of OEC 404(3) and concern[ed] ourselves with whether evidence of that 'act' was nonetheless admissible under the rule." 349 Or 419, 429, 245 P3d 113, (2010). Having consistently avoided the initial question of what constitutes an "act," it is no surprise that litigants and trial courts have failed to tackle the secondary question of what constitutes an "other" act, and, consequently, our treatment of that critical issue under OEC 404 is nonexistent.

I am growing increasingly uncomfortable with our practice of assuming, without deciding. I would resolve this case on the question we added when granting review,

regardless of the fact that no party at trial focused on the intrinsic-extrinsic distinction. Doing so would be similar to how the First Circuit resolved a similar issue:

> "[Defendant] argues on appeal that the district court erroneously admitted the black revolver seized from him during his arrest on a separate charge, one week after the attempted Londonderry robbery. Prior to trial, [defendant] filed a motion to exclude evidence of the revolver. The district court denied the motion and ruled the revolver admissible under [FRE] 404(b) 'on the issue of identity.'

> "We note at the outset that the district court's decision to admit the gun into evidence as proof of identity under [FRE] 404(b) is a bit puzzling. As indicated, [FRE] 404(b) governs the admission of extrinsic evidence of 'other crimes, wrongs, or acts.' Here, the government sought to prove that the gun seized from the defendant was the same gun used in the attempted Londonderry robbery. In other words, the government sought to introduce the gun as intrinsic, direct evidence of the charged crime—not as [FRE] 404(b) evidence. Because we conclude that the handgun was not [FRE] 404(b) evidence at all, we review the district court's admission of the gun applying a more appropriate [FRE] 401/403 analysis."

*United States v. Shea*, 159 F3d 37, 39 (1st Cir 1998).

However, given that I am writing in this case for myself, I will refrain from discussing how Oregon might, eventually, define for itself what constitutes an "other" act for purposes of OEC 404. Such discussions are more appropriate for the engagement of the full court than a single judge. And I need not undertake that task here because, in my view, the video at issue would not be viewed as an "other" act under any definition currently employed in any jurisdiction, nor any definition I could imagine.

The video shows defendant entering the location of the alleged crimes, moments before he supposedly commits them. This is not a video from days or weeks earlier—this is a video of defendant's entry into the location where the actual occurrences at issue at trial took place. The two incidents in question were both prosecuted, in the same case, in charging language alleging a continuous criminal episode. The video is direct evidence of Counts 2 and 4, and

but for the placement of a pillar, would depict defendant committing Count 1. Counsel cannot artificially create an OEC 404 "other" act by simply time slicing one single short video depicting an ongoing criminal episode, into smaller and smaller increments, then waiving jury as to some, but not others. If this were a crime of robbery of a convenience store, we would not sanitize the surveillance video due to concerns of an "other" act excludable by OEC 404 if it also showed defendant shoplifting on his walk down the aisle as he approached the proprietor to rob her.

In short, I can conceive of no reasonable definition of an "other" act, for purposes of OEC 404, that would include the video in this case. Because that threshold requirement has not been met, OEC 404 is inapplicable, and does not require the video's exclusion. Neither the trial court, nor the Court of Appeals, erred.

I respectfully concur.